UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NEXT IT CORPORATION, a Washington Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>SHANTANU ROY and JENNIFER ROY, husband and wife; JOSH KNOWLES, a single person, and NDALL SOLUTIONS, LLC, an Idaho corporation,<br><br>        Defendants. | NO. CV-05-380-LRS<br><br>**PERMANENT INJUNCTION AND ORDER AS TO JOSHUA KNOWLES** |

This matter came before the Court for hearing on the parties' stipulated presentment. Plaintiff is represented by J. Christopher Lynch and Todd Reuter of Preston Gates & Ellis LLP; Defendant Joshua Knowles is represented by Michael J. McMahon of Etter, McMahon, Lamberson & Clary, P.C. The parties have stipulated to entry of this permanent injunction order.

**STIPULATION**

On February 6, 2006 the parties filed a Stipulation (Ct. Rec. 50) setting forth the following agreement between Joshua Knowles and Next IT:

ORDER ~ 1

As a condition of Next IT's stipulation to the entry of this Order, Defendant Joshua Knowles ("Knowles") hereby represents that he does not possess or have access to non-public Next IT computer code or trade secrets in any written, electronic or other tangible form. Knowles further represents that he has not conveyed such code or secrets to any third party and that he has returned any and all such material to Next IT.

Knowles was employed at Next IT for approximately 11 months, during which time he acted as lead developer of the Active Sentry project. In that role, he led the architecture, design and development of the technical aspects of the product, consulted with other Next IT project development teams on other projects, and actively participated in the sales demo and market positioning process. Included in this work was writing technical diagrams and product specifications, and the development of source code specific to the Active Sentry project and the design and testing of how Active Sentry interacts with Next IT's core technology (sometimes called the "Brain").

The Active Sentry source code Mr. Knowles directly wrote was strictly for the server application, and involved XML parsing and database interaction. Knowles did not directly write any source code with respect to indexing or webscraping for Next IT. Further, Knowles assisted in the deployment and installation of Active Sentry for one client only, who is not named in this public record, but he did participate in many sales presentations and technical reviews with potential customers. Knowles, on occasion, reviewed and edited marketing materials specific to the Active Sentry project for technical accuracy.

ORDER ~ 2

While Knowles was employed at Next IT he was also involved with Next IT's InSuite™ and ActiveAgent™ programs and thus also became familiar with the general workings of Next IT's core technology (sometimes called the "Brain").

Based on these agreements and representations, the parties have agreed that the Court should enter an Order that Knowles is enjoined, directly and indirectly, from the following:

1.  Transferring, publishing, disclosing or reporting, directly or indirectly, any Next IT "Proprietary Information" (computer code, trade secrets, or confidential information), which includes the design, coding, testing, installation, service or maintenance of agent technology, indexing applications, webscraping applications, security applications, insider threat applications, and/or artificial intelligence applications. This obligation shall not expire.  As used here, however, "Proprietary Information" shall not include information that is known publicly or generally employed in the trade; that is generic knowledge that Knowles would have learned in the course of similar employment elsewhere; that was in Knowles possession or was known to Knowles, without an obligation to keep it confidential, before such information was disclosed to Knowles by Next IT; that is or becomes public knowledge through its source other than Knowles and through no fault of Knowles; that is independently developed by or for Knowles; or that is or becomes lawfully available to Knowles from a source other than Next IT.

2.  For a period of three years from January 1, 2006, engaging, directly or indirectly, in any employment, occupation, consulting or other activities in which he architects, writes or develops any software

ORDER ~ 3

applications that are similar to or compete with Next IT's "Proprietary Information" and technology, as described below:

    A.    Software applications, similar to or compete with Next IT's products including Active Sentry™ (patent pending), Flex Engine™ (patent pending), Converge™, Scout™, Active Agent™, and InSpectre™, and the following technologies as they relate to these products:

    i.    Agent based applications that reside on the client's system;

    ii.    Monitoring the activity of network users for security purposes;

    iii.    Reading, analyzing or logging input and actions of computer system users, and then intelligently reporting, blocking, or notifying others whenever a configurable security or network policy sensitive event happens on computers or the network;

    iv.    Natural Language Processing ("NLP") technology;

    v.    The ability to parse incoming text streams from any given source for the purpose of extracting the relevant numbers, keys, vocabulary, synonyms, concepts or intent and then, based on the extracted knowledge, take appropriate actions.  This is sometimes referred to as "Concept Recognition Technology;"

    vi.    The ability to connect to multiple data sources (database, web page, web service, file based documents, test files, etc.) for the purpose of retrieving data and creating an index from the contents utilizing NLP and probabilistic techniques to create an automatic hierarchy of relevant date, documents or links, and to summarize the relevant documents;

    vii.    Agent-based Internet Relay Chat ("IRC") monitoring technology;

  viii. Interactive virtual agent technology. This includes applications that provide a virtual entity capable of interpreting both traditional search keywords and natural language user input to determine the user's intent from a conceptual perspective, and then responds through an application event that can return a textual or audible response, or may interact with other applications or databases;

  ix. Log analysis technology that is used to perform system and security auditing, and security event logging, across a network utilizing NLP and probabilistic techniques or otherwise similar to subsection (v) immediately above;

  x. Use of virtual agents to help correlate related concepts in any data source including the classified date of government intelligence agencies, enabling and allowing the different national security agents to find each other, share their information, and search others' classified data for relevant information, all without violating security rules.

 Nothing in this list of activities (2(A)(i-ix) shall preclude Knowles from using any open source technology or other commercially available software applications as part of his employment, occupation, consulting, or other activities so long as the manner of such use does not violate this Permanent Injunction Order.

 3. For a period of one year from January 1, 2006, recruiting, soliciting, inducing, inviting or otherwise encouraging any Next IT employee to accept any employment or independent contractor or other

business relationship with an employer or entity or person other than Next IT.

4.   For a period of three years from January 1, 2006, upon accepting employment with any person or entity that does business in the areas listed in paragraph No. 2 above, Mr. Knowles shall provide said person or entity a letter noting the limitations set out in paragraphs Nos. 1 and 2 above.  This letter shall be in the form of attached Ex. A hereto, incorporated herein by reference.  An officer or Human Resources employee of the new employer shall sign a receipt or a copy of the Exhibit A letter and Mr. Knowles shall return a copy of the receipt or signed copy to Next IT within five business days of obtaining it.

5.   For a period of five years from the date of this Order, Next IT and Knowles will not engage in any business defamation of the other, nor of the employees and/or officers of either.

6.   All other claims, counterclaims or cross-claims for any form of relief are denied.

7.   Each party shall bear its own costs.

The parties further agree and represent to the Court that:

8.   This Court has jurisdiction over the subject matter and each party to this action, not only for the purposes of rendering the Stipulated Order, but for enforcing it in any manner permitted by law.

9.   The parties have been fully counseled on and understand the consequences of this Stipulation.

10.  The attorneys who sign this Stipulation on behalf of the parties are fully authorized to make this Stipulation on behalf of their respective clients.

ORDER ~ 6

11. The parties indicate their consent to this Stipulation by their signature on this document.

12. The terms of this Order are intended to define the relationship between Joshua Knowles and Next IT. Therefore, the Proprietary Information Agreement effective December 6, 2004 between Next IT and Joshua Knowles is of no force and effect from the date of this Order.

**ORDER**

**ACCORDINGLY**, pursuant to this Stipulation, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendant Joshua Knowles is hereby enjoined from:

1. Transferring, publishing, disclosing or reporting, directly or indirectly, any Next IT "Proprietary Information" (computer code, trade secrets, or confidential information), which includes the design, coding, testing, installation, service or maintenance of agent technology, indexing applications, webscraping applications, security applications, insider threat applications, and/or artificial intelligence applications. This obligation shall not expire. The term "Proprietary Information" as used here shall not include information that is known publicly or generally employed in the trade; that is generic knowledge that Josh Knowles would have learned in the course of similar employment elsewhere; that was in Josh Knowles possession or was known to Josh Knowles, without an obligation to keep it confidential, before such information was disclosed to Josh Knowles by Next IT; that is or becomes public knowledge through its source other than Josh Knowles and through no fault of Josh Knowles; that is independently developed by or for Josh Knowles; or that

is or becomes lawfully available to Josh Knowles from a source other than Next IT.

    2.    For a period of three years from January 1, 2006, engaging, directly or indirectly, in any employment, occupation, consulting or other activities in which he architects, writes or develops any software applications that are similar to or compete with Next IT's "Proprietary Information" and technology, as described in paragraph No. 2 of the Stipulation, above.

    3.    For a period of one year from January 1, 2006, recruiting, soliciting, inducing, inviting or otherwise encouraging any Next IT employee to accept any employment or independent contractor or other business relationship with an employer or entity or person other than Next IT.

    4.    For a period of three years from January 1, 2006, upon accepting employment with any person or entity that does business in the areas listed in paragraph No. 2 above, Mr. Knowles shall provide said person or entity a letter noting the limitations set out in paragraphs Nos. 1 and 2 above. This letter shall be in the form of attached Ex. A hereto, incorporated herein by reference. An officer or Human Resources employee of the new employer shall sign a receipt or a copy of the letter and Mr. Knowles shall return a copy of the receipt or signed copy to Next IT within five business days of obtaining it.

    5.    For a period of five years from the date of this Order, Next IT and Knowles will not engage in any business defamation of the other, nor of the employees and/or officers of either.

    6.    All other claims, counterclaims or cross-claims for any form

of relief are denied.

7. Each party shall bear its own costs.

8. The terms of this Order are intended to define the relationship between Joshua Knowles and Next IT. Therefore, the Proprietary Information Agreement effective December 6, 2004 between Next IT and Joshua Knowles is of no force and effect from the date of this Order.

**IT IS SO ORDERED.**

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 14th day of February, 2006.

*s/Lonny R. Suko*

LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER ~ 9

**EXHIBIT A**
**TO STIPULATION AND PERMANENT INJUNCTION ORDER**
**BETWEEN NEXT IT CORP. AND JOSHUA KNOWLES**

Dear _____:

    I am looking forward to starting work with [<u>New Company</u>].  Due to obligations I have to a former employer (Next IT Corporation), I need to confirm in writing that I will not be working at [<u>New Company</u>] on assignments in the areas of:

A.    Software applications, that are similar to or compete with Next IT's products including Active Sentry™ (patent pending), Flex Engine™ (patent pending), Converge™, Scout™, Active Agent™, and InSpectre™, and the following technologies as they relate to these products:

    i.   Agent based applications that reside on the client's system;

    ii.  Monitoring the activity of network users for security purposes;

    iii. Reading, analyzing or logging input and actions of computer system users, and then intelligently reporting, blocking, or notifying others whenever a configurable security or network policy sensitive event happens on computers or the network;

    iv.  Natural Language Processing ("NLP") technology;

    v.   The ability to parse incoming text streams from any given source for the purpose of extracting the relevant numbers, keys, vocabulary, synonyms, concepts or intent and then, based on the extracted knowledge, take appropriate actions.  This is sometimes referred to as "Concept Recognition Technology;"

ORDER ~ 10

    vi.  The ability to connect to multiple data sources (database, web page, web service, file based documents, test files, etc.) for the purpose of retrieving data and creating an index from the contents utilizing NLP and probabilistic techniques to create an automatic hierarchy of relevant date, documents or links, and to summarize the relevant documents;

    vii. Agent-based Internet Relay Chat ("IRC") monitoring technology;

    viii. Interactive virtual agent technology.  This includes applications that provide a virtual entity capable of interpreting both traditional search keywords and natural language user input to determine the user's intent from a conceptual perspective, and then responds through an application event that can return a textual or audible response, or may interact with other applications or databases;

    ix.  Log analysis technology that is used to perform system and security auditing, and security event logging, across a network utilizing NLP and probabilistic techniques or otherwise similar to subsection (v) immediately above;

    x.   Use of virtual agents to help correlate related concepts in any data source including the classified date of government intelligence agencies, enabling and allowing the different national security agents to find each other, share their information, and search others' classified data for relevant information, all without violating security rules.

ORDER ~ 11

I am allowed to work on assignments in these areas, but only after January 1, 2009.  Also, even after January 1, 2009, I won't be able to use any trade secrets or other confidential information that I learned during my employment at Next IT Corp.

Having said all that, I'm eager to start and appreciate the opportunity.  Thank you and please sign and return this to me.

                                  _____
                                  Joshua Knowles
                                  Date:  _____

Received and acknowledged:
_____
Title:_____
Date:_____

ORDER ~ 12